UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| PAUL D. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:15 CV 28 JMB |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Paul D. Johnson ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Defendant") denying his application for disability benefits. Because the final decision of the Commissioner is supported by substantial evidence, as discussed below, it is affirmed.[1]

**I.      Procedural and Factual Background**

On May 24, 2012, Plaintiff filed an application for disability benefits under Title II of the Social Security Act. 42 U.S.C. § 401 *et seq*. (Tr. 128)[2] Plaintiff's application was denied, and he then requested a hearing before an administrative law judge ("ALJ"). Plaintiff appeared (with counsel) at the hearing on October 2, 2013. (Tr. 36-59) In a decision dated January 30, 2014, the ALJ found Plaintiff not disabled. (Tr. 11-22) Plaintiff appealed that decision, but the Appeals Council declined review. (Tr. 1) Plaintiff's claim is thus properly before this Court. See 42 U.S.C. § 405(g).

Plaintiff is a 44 year-old man who has alleged a variety of physical and mental issues, including injuries to both of his knees, a bulging disc in his neck, chronic back pain, and severe

---

[1] This matter is before the Court for judicial review pursuant to 42 U.S.C. § 405(g), and with the consent of the parties pursuant to 28 U.S.C. § 636(c).

[2] References to "Tr." are to the administrative record filed herein by Defendant.

anxiety. (Tr. 171)  In this appeal, Plaintiff alleges for the first time that he suffers from a severe impairment of depression. (ECF No. 17 at 26-29)

Plaintiff's alleged knee problems began around 2001, as a result of his work as an HVAC technician. (Tr. 407)  Plaintiff's alleged back issues and pain appear to be a result of an automobile accident in June of 2006. (Tr. 252)  Plaintiff's anxiety issues first appear in the medical record in November of 2010. (Tr. 260)  At his hearing, Plaintiff testified concerning these issues, and he also discussed for the first time having carpal tunnel syndrome. (Tr. 38, 40-44)  In addition, Plaintiff testified to his daily activities, and how his alleged limitations preclude him from working.

After hearing Plaintiff's testimony, and reviewing the objective medical evidence, the ALJ ultimately found Plaintiff not disabled under the law. (Tr. 22)  Consistent with the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the requirements of occupations such as a storage facility rental clerk, floor attendant, and information clerk. (Id.)  In arriving at this decision, the ALJ followed the required five-step inquiry.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since August 26, 2011. (Tr. 13)  At step two, the ALJ found Plaintiff had the following severe impairments:  mild carpal tunnel syndrome on the right side; degenerative disc disease of the lumbar and cervical spines; a history of surgery on both knees; and anxiety disorder. (Id.)  At step three, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, meets one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1.[3] (Id.)

---

[3] The ALJ considered the following listings:  (1) 1.02, concerning major dysfunction of a joint; (2) 1.04, for back disorders; (3) 12.06, relating to anxiety disorders; and (4) 12.09, relating

At step four, the ALJ reviewed the entire record and concluded that Plaintiff retained the RFC to "perform light work as defined in 20 CFR 404.1567(b)" with the additional limitations of "never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally stooping, kneeling, crouching, or crawling; and never having repetitive flexion, extension, or rotation of the neck." Additionally, Plaintiff "can only do frequent bilateral fingering (defined as fine manipulation of items no smaller than a paper clip) and frequent bilateral handling (defined as gross manipulation)." Also, Plaintiff must "avoid all use of exposed moving machinery and all exposure to unprotected heights." Finally Plaintiff "is limited to simple work …, routine and repetitive tasks and only occasional interaction with coworkers or the general public." (Tr. 15-16)

The ALJ then found Plaintiff unable to perform his past work as a heating and air-conditioning technician. (Tr. 21) Then the ALJ proceeded to step five of the analysis. There, as noted above, the ALJ found that jobs exist in the national economy that Plaintiff can still perform, such as a storage facility rental clerk, floor attendant, and information clerk. (Tr. 22) Therefore, the ALJ found that Plaintiff was not disabled under the law. (Tr. 22)

After the ALJ's ruling, Plaintiff submitted additional evidence to the Appeals Council. This evidence included a letter, dated March 7, 2014, from Dr. Nickolas Gillette, D.O., Plaintiff's treating physician, listing Plaintiff's ailments as cervical spondylosis and degenerative disc disease, along with lumbago and bulging disc, causing radiating pain. (Tr. 403) Dr. Gillette concluded that these issues "limit [Plaintiff's] ability to get and keep employment." (Id.) Plaintiff also submitted interrogatories from Dr. Gillette dated August 7, 2014 in which Dr. Gillette discussed Plaintiff's exertional limitations. (Tr. 31-33) Additionally, Plaintiff submitted

---

to substance abuse disorders. See 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff does not challenge these findings.

a medical evaluation from 2002 in which a doctor opined that Plaintiff lost 25 percent of the use of his left knee, and 40 percent of the use of his right knee. (Tr. 409) The Appeals Council noted that it considered this additional evidence, but held that it did not undermine the ALJ's original decision. (Tr. 1-4)

Plaintiff then appealed to this Court under 42 U.S.C. § 405(g). The general issue before the Court is whether the decision of the Commissioner is supported by substantial evidence. More specifically, the parties dispute: (1) the propriety of the ALJ's findings at step two— Plaintiff argues that the ALJ erred by not finding that Plaintiff suffers from the severe impairment of depression, even though he never alleged this impairment in his application for benefits or at his hearing; and (2) whether the ALJ should have ordered an additional consultative examination from Plaintiff's treating psychiatrist to supplement the record relating to Plaintiff's mental impairments.

## II. Standard of Review and Legal Framework

"To be eligible for [disability] benefits, [Plaintiff] must prove that [he] is disabled …." Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any

other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled. "During this process the ALJ must determine: '1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not 5) whether the claimant can perform any other kind of work.'" Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)). "If, at any point in the five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends." Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)); see also Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the

Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ;
2. Plaintiff's vocational factors;
3. The medical evidence from treating and consulting physicians;
4. Plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments;
5. Any corroboration by third parties of Plaintiff's impairments;
6. The testimony of vocational experts when required, including any hypothetical questions setting forth Plaintiff's impairments.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## III. Discussion

The issues before the Court are noted above. After a careful review of the record, the Court finds that: (1) the ALJ's failure to include depression as a severe impairment is supported by substantial evidence; and (2) the ALJ was not required to obtain a consultative exam regarding Plaintiff's mental health impairments because there was sufficient information in the

record to allow him to adjudicate these claims. Therefore, the Court must affirm the decision of the ALJ that Plaintiff is not disabled.[4]

### A. **The ALJ's Step Two Findings**

Plaintiff's first argument is that the ALJ erred in failing to find his depression to be a severe impairment. (ECF No. 17 at 26) An impairment is severe if it has more than a minimal impact on an individual's ability to do basic work activities. See 20 C.F.R. § 404.1521(a). Plaintiff points to several portions of the record which he says provide evidence that his depression was a severe impairment. For example, Dr. Joseph Novinger, M.D., in the course of treating Plaintiff for anxiety in November, 2010, noted that Plaintiff had a "depressed mood," and that he "ruminates on dying, not suicide." (Tr. 260) Plaintiff also points to an evaluation by Cindy Mayberry, an Advanced Practice Nurse ("APN") specializing in psychiatry. (Tr. 348-49) In that evaluation, nurse Mayberry diagnosed Plaintiff with PTSD, "major depression is recurrent," and generalized anxiety disorder with panic. (Tr. 349) Finally, Plaintiff's treating physician, Dr. Gillette, noted in treatment records from August 30, 2013, that a review of Plaintiff's symptoms was "positive for depression." (Tr. 369) Plaintiff argues that these findings constitute substantial evidence that he suffers from depression, and the ALJ's failure to analyze this issue necessitates remand.[5] (ECF No. at 27-29)

---

[4] The Court notes at the outset that the ALJ also discounted Plaintiff's credibility concerning the intensity, persistence and limiting effects of his symptoms. (Tr. 17) Plaintiff does not challenge the ALJ's adverse credibility finding. Even if Plaintiff had challenged it, however, the ALJ gave good reasons for his adverse credibility determination and therefore, it is entitled to deference in this Court. See Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination.").

[5] The Court notes that Plaintiff also alleges that he was seen and treated by a "Brenda S.," and Plaintiff implies that this is relevant to the depression issue. (ECF No. 17 at 27) However, those purported treatment records are not in the record. Under the law, it is Plaintiff's burden to submit evidence. See, e.g., 20 C.F.R. § 404.1512 ("You must inform us about or submit all

Defendant makes several arguments in response. Defendant argues that remand is unnecessary because: (1) it was Plaintiff's burden to prove that he suffered from depression, and yet he did not even allege that he suffered from depression, nor did he proffer evidence in support (either in his initial application or his hearing before the ALJ); (2) the evidence is insufficient to establish that Plaintiff's alleged depression constitutes a severe impairment; and (3) even if Plaintiff did suffer from depression, a failure to list that impairment as severe at step two is not a basis for remand where the ALJ found Plaintiff suffered from a severe impairment (anxiety), continued in the five-step analysis, and accounted for any limitations imposed by the depression in the RFC at step four. (ECF No. 18 at 7-10) Defendant's position is that even if the ALJ had found Plaintiff's depression to be severe, the outcome of the case would not have changed. (Id. at 11)

Defendant is correct. As an initial matter, the Court notes that it is Plaintiff's burden to prove the existence of severe impairments. See Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007) ("It is the claimant's burden to establish that his impairment or combination of impairments are severe."). Yet Plaintiff failed to allege depression as a severe impairment in his application for disability benefits. (Tr. 171) Nor did he discuss depression issues at his hearing before the ALJ, let alone set out evidence proving that his depression was a severe impairment. This omission, combined with his failure to proffer evidence proving that his depression is a severe impairment is significant. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (observing that a failure to "allege depression in [an] application for disability benefits is significant, even if the evidence of depression was later developed"). Additionally, an ALJ is not

---

evidence known to you that relates to whether or not you are blind or disabled. This duty is ongoing….We will consider only impairment(s) you say you have or about which we receive evidence."). Because Plaintiff did not submit this evidence, the Court cannot consider it.

required to investigate a claim that is not presented at the time of the benefits application or at the hearing. See Mouser v. Astrue, 545 F.3d 634, 639 (8th Cir. 2008); see also 20 C.F.R. § 404.1512(a) ("We will consider only impairment(s) you say you have…").  Therefore, Plaintiff's failure to even allege depression as a severe impairment, or offer proof that he suffers from depression, is a significant factor supporting the ALJ's decision.

Furthermore, even if Plaintiff had formally alleged depression as a severe impairment, there is minimal proof in the record to substantiate that claim.  As to Plaintiff's purported evidence from Dr. Novinger, his primary care physician in 2011, it is true that the doctor noted Plaintiff had a "depressed mood," but that notation is not a diagnosis.  In contrast, there is evidence that Dr. Novinger affirmatively considered whether Plaintiff suffered from depression, and found that he did not.  Dr. Novinger screened Plaintiff for depression on February 22, 2011, and the "[r]esult of screening was negative." (Tr. 262)  Another such screening on March 22, 2011 similarly came up negative. (Tr. 264)  The only mental impairment noted during both of these check-ups was generalized anxiety. (Id.)

The records of Dr. Jeffrey Harden, D.O., Plaintiff's treating psychiatrist in 2011, similarly do not support a diagnosis of depression.  The ALJ pointed out—and this Court agrees—that it appears Plaintiff was not seeking out Dr. Harden for the purpose of mental health treatment, but instead as a requirement of his terms of probation after he submitted a urine screen that was positive for drug use, indicating that Plaintiff had been using drugs while on probation.[6] In any event, Dr. Harden diagnosed Plaintiff with generalized anxiety disorder, panic disorder, marijuana abuse, and polysubstance abuse. (Tr. 272)  There was no diagnosis of depression, and in fact Dr. Harden noted that Plaintiff's mood was "happy." (Id.)  Dr. Harden also noted that

---

[6] Plaintiff was on probation following a 2007 criminal charge for growing marijuana.

Plaintiff was negative for issues of suicide or mood swings, and that his motivation and energy were "good." (Id.) Significantly, in August of 2011, Dr. Harden noted that Plaintiff denied any history of depression or mania. (Tr. 275)

Finally, even Plaintiff's assertion that his subsequent primary care physician—Dr. Gillette—diagnosed him with depression fails to give context. On one occasion, in August of 2013, Dr. Gillette noted that Plaintiff was positive for depression. (Tr. 369) On the other hand, Dr. Gillette never mentioned Plaintiff's purported depression in any other medical records, nor prescribed any medication or course of treatment for depression. As discussed below, Dr. Gillette saw Plaintiff over several months, and never discussed Plaintiff's depression elsewhere.

When he began seeing Plaintiff in December of 2012, Dr. Gillette noted that Plaintiff presented with issues of back pain, and noticed that his past medical history included diagnoses of anxiety, herniated disc, and knee issues. (Tr. 322) In his review of Plaintiff's symptoms, Dr. Gillette noted Plaintiff was positive for back pain and neck pain, but negative for depression and other mental health issues. (Tr. 323) Two weeks later, Dr. Gillette noted that Plaintiff presented with anxiety issues. Dr. Gillette noted that the symptoms were "fairly controlled," and in another review of Plaintiff's symptoms, noted that he was positive for back pain, neck pain, and anxiety, but negative for depression and other psychiatric symptoms. (Tr. 336-37) During a follow-up appointment in February, 2013, Plaintiff only complained about his back pain, not anxiety or depression, and Dr. Gillette noted that Plaintiff "states that his Anxiety has been well controlled with the Xanax." (Tr. 343)

Even in July of 2013, Plaintiff presented with anxiety, back pain, and chest pain, not depression. Plaintiff presented with a "depressed mood," but denied "diminished interest or pleasure, hallucinations or thoughts of death or suicide." (Tr. 357) Dr. Gillette thought the

anxiety was "associated with chronic pain and headache," as opposed to depression. (Id.) In his review of Plaintiff's symptoms, Dr. Gillette thought Plaintiff was positive for anxiety, but negative for depression. (Tr. 359)

It appears that—taken as a whole—Dr. Gillette did not consider Plaintiff to be suffering from depression. Even after the single instance that he noted Plaintiff positive for depression, in August of 2013, Dr. Gillette then subsequently issued a medical source statement on September 25, 2013, in which he listed Plaintiff's diagnoses as cervicalgia, lumbago, and bulging disc. (Tr. 390) Dr. Gillette did not list depression as a diagnosis. Furthermore, in a follow-up letter from March of 2014, Dr. Gillette opined that Plaintiff suffered from "cervical spondylosis and degenerative disc disease, along with lumbago and bulging disc." (Tr. 403) Dr. Gillette made no mention of depression, or any mental health impairment. This omission is significant. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir. 1996) (noting that a lack of significant findings or restrictions imposed by treating physician supported the ALJ's finding of no disability)). The overwhelming evidence indicates that—even after the ALJ's decision denying benefits—Dr. Gillette did not believe that Plaintiff suffered from depression.

The Court also finds it relevant that Plaintiff did not allege any issues with depression in his function report. (Tr. 199-206) In that report, Plaintiff discussed how his back and neck pain prevented him from engaging in certain activities. Plaintiff discussed how anxiety precluded him from certain activities, but he made no mention of any issues with depression. Similarly, Plaintiff's wife filled out a third party function report. (Tr. 178-85) In that report, (which substantially repeats everything said in Plaintiff's function report) Plaintiff's wife does not

mention depression at all. She mentions how neck and back pain limit Plaintiff, but does not discuss any impact that depression may have on Plaintiff's activities.

Additionally, and at a broader level, the evidence contained in the third party function report does not indicate activities consistent with disability. For example, the third party report shows that Plaintiff: (1) has no problems with issues of personal care; (Tr. 179) (2) does yard work, including watering the garden for an hour or two every other day; (Tr. 180) (3) goes outside daily; (Tr. 181) (4) is able to pay bills, count change, handle a savings account, and use a checkbook or money orders; (Id.) (5) has hobbies, including "gardening" and "artifact hunting," which he does daily; (Tr. 182) and (6) he likes to talk on the phone, and "fish" as well as go do church and see relatives. (Id.) These activities are inconsistent with allegations of complete disability. See Perkins v. Astrue, 648 F.3d 892, 900-01 (8th Cir. 2011) (noting that a plaintiff who could feed, dress, and bathe herself, prepare her son for school, go grocery shopping, attend church once a month, and attend parent teacher conferences, and "help out" at a thrift store engaged in daily activities "inconsistent" with allegations of complete disability).[7]

Finally, there was one specific diagnosis of depression in the medical records—that of APN Cindy Mayberry. APN Mayberry diagnosed Plaintiff with PTSD, generalized anxiety disorder, and said that "major depression is recurrent." (Tr. 349) However, the ALJ was right to reject this information as an official diagnosis, because APNs are not acceptable medical sources

---

[7] The Court also finds it significant that Plaintiff claimed he is unable to work before the Social Security Administration, yet he also received state unemployment benefits. (Tr. 155-56) In order to receive such benefits, Plaintiff was statutorily required to aver that he was "ready and willing" to work. Such an admission undermines Plaintiff's assertions that he is disabled. See Johnson v. Chater, 108 F.3d 178, 180-81 (8th Cir. 1997) (holding that a claimant may in effect be admitting that he has the ability to work by applying for unemployment compensation benefits "because such an applicant must hold himself out as available, willing, and able to work…. [a]pplying for unemployment benefits 'may be some evidence, though not conclusive, to negate' a claim of disability") (internal citations omitted).

for diagnosing claimants under the Social Security regulations. See Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003) (noting that an "Advanced Registered Nurse Practitioner" is not an acceptable medical source under the relevant regulations); see also 20 C.F.R. §§ 404.1513(a), (d)(1) (noting that nurse-practitioners are only acceptable as "other sources," who may opine on the *severity* of an impairment, but cannot establish the *existence* of the impairment). This evidence is not sufficient to establish that Plaintiff suffered from a severe impairment of depression, especially when viewed in the context of all of the other medical evidence cited above, and the fact that Plaintiff never alleged depression until his appearance in this Court.[8]

Therefore, it is clear that the weight of the medical and other evidence in this case demonstrates that: (1) Plaintiff did not allege depression as a severe impairment until his appeal to this Court; (2) Plaintiff did not affirmatively offer evidence in support of his assertion, even though it is his burden to prove severity; and (3) the weight of the medical and other evidence

---

[8] In his Reply brief, Plaintiff also points to an evaluation by another nurse practitioner, Mr. Harry Stevenson, which noted a history of depression. (Tr. 317) This does not undermine the ALJ's conclusion because: (1) it is not a diagnosis; (2) within that same note, Mr. Stevenson concluded that Plaintiff suffered from spondylosis of the cervical and lumbar spines—he did not diagnose any mental impairments; (Tr. 319) (3) the treatment plan did not include proposed treatments for mental impairments; and (4) Mr. Stevenson is not an acceptable medical source.

Also in his Reply brief, Plaintiff points to evidence from two orthopedists, Drs. Andrew Volgas, M.D., *to whom Plaintiff was referred for evaluation of his carpal tunnel syndrome*, and Mark Drymalski, M.D., *to whom Plaintiff was referred for evaluation of his neck and back pain*.

Dr. Volgas found that Plaintiff was positive for, *inter alia*, depression. (Tr. 394) However, Dr. Vargas' assessment is inconsistent, because he also notes that Plaintiff's mood is normal, and he did not diagnose Plaintiff with any psychological issues, and did not include any corresponding treatment in his treatment plan.

In completing Plaintiff's social history, Dr. Drymalski, who is an orthopedist, as opposed to a psychiatrist, noted that Plaintiff "has poor sleep and depression as well as suicide attempt/ideation." (Tr. 398) Dr. Drymalski was evaluating Plaintiff's only complaint that day— "Neck pain, arm numbness and pain." (Tr. 396) There is no indication that Dr. Drymalski was attempting to make a psychiatric diagnosis. Furthermore, Dr. Drymalski's treatment plan included "pain management," relating to Plaintiff's neck pain, not depression treatment. (Tr. 399) Also, neither doctor referred Plaintiff to a psychiatric specialist or suggested any follow up psychiatric care.

demonstrates that Plaintiff's depression does not meet the requirements for a finding of severity. Although "severity is not an onerous requirement for the claimant to meet … it is also not a toothless standard." Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007) (internal citations omitted). For the reasons stated above, it is clear that Plaintiff did not meet his burden to prove that he suffered from the severe impairment of depression.

Alternatively, a further problem for Plaintiff is that even if the ALJ should have noted depression as a severe impairment, his failure to do so would not be sufficient cause for remand because it is the functional limitations imposed by a severe impairment that are dispositive, not the fact of diagnosis. See Collins ex rel. Williams v. Barnhart, 335 F.3d 726, 731 (8th Cir. 2003) ("[T]he dispositive question remains whether [Plaintiff's] functioning in various areas is markedly impaired, not what one doctor or another labels his disorder."). Thus, so long as the ALJ found one significant impairment at step two, and moved on to consider whatever effects Plaintiff's depression might have imposed at steps three and four, then Plaintiff's alleged error is harmless. (Id.) Here, it is clear that the ALJ took into account all of the functional limitations from Plaintiff's mental impairments when he considered Plaintiff's RFC at step four.

For example, Plaintiff reported to Dr. Gillette that his anxiety symptoms were aggravated by "conflict, or stress and social interactions." (Tr. 336) The ALJ accepted this evidence, and accounted for this shortcoming in functional ability by limiting Plaintiff to simple work, and work involving "only occasional interaction with coworkers or the general public." (Tr. 15-16) This limitation is consistent with the ALJ's findings regarding Plaintiff's activities of daily living, social functioning, and concentration, persistence, and pace.

Indeed, the ALJ discussed at length the allegations of Plaintiff's mental impairments. The ALJ discussed how, in relation to Plaintiff's anxiety, Plaintiff's lack of consistent treatment

tended to support the idea that this mental limitation was not so debilitating as to preclude all work. (Tr. 19) This is a permissible inference by the ALJ. See Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010). The ALJ also noted how a consultative exam in July of 2012 found that Plaintiff had "good memory and concentration," even though it also found that Plaintiff's anxiety caused "fatigue." (Id.) Furthermore, the ALJ noted that—according to Plaintiff's own reports—his medications worked very well in controlling his anxiety symptoms. Where symptoms are well-controlled by medication, plaintiffs will generally not be considered disabled. See Perkins v. Astrue, 648 F.3d 892, 901 (8th Cir. 2011).

More explicitly, the ALJ specifically said that he considered Ms. Mayberry's diagnoses that Plaintiff suffered from depression, even though she was not an appropriate medical source. (Tr. 19) Finally, the ALJ noted that during Plaintiff's orthopedic evaluations in August and September of 2013, he was "alert, oriented, [and] had an appropriate affect." (Tr. 19, 394, 398) It is clear, therefore, that the ALJ took into account Plaintiff's mental impairments, and analyzed that evidence in some detail. In light of that finding, it is inappropriate to remand this case even if the ALJ should have formally labelled Plaintiff's depression "severe," because the ALJ addressed the dispositive inquiry—Plaintiff's functional limitations. Collins, 335 F.3d at 731.

### B. Sufficiency of the Record

Plaintiff's second argument is that the ALJ erred in failing to request that the "treating psychiatrist" perform a consultative examination.[9] (ECF No. 17 at 29) Plaintiff argues that the ALJ "clearly had questions about the interpretation of the psychiatric evidence, [and] could have had a Consultative Examination provided by the treating psychiatrist." (ECF No. 17 at 29-30)

---

[9] It is not entirely clear, but it appears that Plaintiff is suggesting that Dr. Harden should perform the consultative examination. (See Tr. 280) It is a stretch, however, to call Dr. Harden Plaintiff's "treating psychiatrist." This is because Dr. Harden provided counseling services back in 2011 and 2012. Since that time, Plaintiff has been seeing APN Mayberry for counseling.

Plaintiff alludes to the Program Operations Manual System ("POMS") provision which recommends that, if the Commissioner decides to purchase a consultative examination, the ALJ should try to obtain such an evaluation from a plaintiff's treating physician or psychiatrist.

Defendant, on the other hand, argues that the ALJ had sufficient medical evidence before him to fashion an RFC. (ECF No. 18 at 11-13) Defendant points out that the ALJ discussed the medical evidence from Dr. Harden as well as the portions of Dr. Gillette's treatment notes that dealt with anxiety and other mental impairments. Additionally, Defendant points out that the POMS that Plaintiff alludes to is not binding upon the Commissioner, and that "nothing barred Plaintiff from obtaining this evaluation and opinion on his own, if he felt it would be beneficial to his claim." (ECF No. 18 at 13)

The Court agrees with Defendant. An ALJ is only required to obtain additional medical examinations where the medical records and evidence before him is not sufficient to determine whether Plaintiff is disabled. See Johnson v. Astrue, 627 F.3d 316, 320 (8th Cir. 2010). An ALJ can issue a decision without requesting additional testing where other evidence in the record provides substantial evidence for the ALJ's decision. See Haley v. Massanari, 258 F.3d 742, 749 (8th Cir. 2001); see also 20 C.F.R. § 404.1519a(b).

Here, the Court finds that there was sufficient evidence before the ALJ to formulate an RFC, and additional psychological testing was unnecessary. The ALJ had Dr. Harden's notes and diagnoses before him when evaluating Plaintiffs' RFC. Also, the ALJ had Dr. Gillette's notes before him when making his RFC. Furthermore, the ALJ had APN Mayberry's analysis of Plaintiff's anxiety and depression issues. (Tr. 19) The ALJ therefore had before him multiple different pieces of probative medical evidence along with Plaintiff's own function report and third party reports. Also, it is clear that the ALJ articulated the logical link between that

evidence and the RFC that he ultimately found. (See Tr. 19) This was sufficient evidence with which to determine Plaintiff's RFC.[10]

The Court also agrees that Plaintiff's reliance upon the POMS is misplaced, because nothing in that manual required the ALJ to seek additional medical evidence where he had enough evidence before him to make a decision. The legal duty to seek additional evidence is based on the case law and regulatory provisions cited above, not POMS. But even if the POMS had directed the ALJ to seek additional evidence, the ALJ would not be bound by that provision. See Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (per curiam) (holding that internal Social Security procedure handbooks have "no legal force," and do "not bind the SSA"); see also Shontos, 328 F.3d at 424 (noting that the "POMS guidelines do not have legal force, and do not bind the Commissioner").[11]

---

[10] As a final matter, the Court notes that Plaintiff alleges the ALJ "had questions" about the psychiatric evidence, and therefore should have ordered additional consultative examinations. Plaintiff does not elaborate on what questions the ALJ supposedly had about the evidence. The Court has reviewed the ALJ's decision in detail, and can see no area in which the ALJ seemed uncertain or appeared to have unresolved questions.

[11] At times, Plaintiff also seems to be making a third argument—that the hypothetical question posed to the VE does not include all of Plaintiff's relevant limitations. (See ECF No. 17 at 29) Plaintiff intertwines this argument with his assertion that the ALJ failed to find Plaintiff's depression a severe impairment. This argument is unavailing, because—as noted above—the ALJ's failure to find that Plaintiff's alleged depression severe was proper. Therefore, it did not need to be included in the hypothetical question. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the [VE] needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (citations omitted). In all other respects, the hypothetical question included the relevant limitations found in the RFC. Because the hypothetical question was proper, the VE's answer constitutes substantial evidence supporting the denial of benefits. Id.

## IV. Conclusion

For all of the foregoing reasons, Plaintiff's arguments that the ALJ erred are unavailing. The ALJ thoroughly evaluated the evidence in this case, and gave Plaintiff a full and fair hearing. The ALJ's conclusions in this matter are supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge in this matter is affirmed.

A separate Judgment shall be entered this day.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of May, 2016